UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| JUSTIN ANTHONY CADZOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:12-CV-225-BG |
| ) | ECF |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Justin Anthony Cadzow claims he suffers from mental impairments that render him disabled and seeks disability insurance benefits as a disabled adult child pursuant to 42 U.S.C. § 402(d)(1)(B). Section 402(d)(1)(B) entitles a disabled child to receive disability insurance benefits based on the earning records of a parent who is entitled to disability insurance benefits or who is deceased and was insured at the time of death. *See id.; see also* 20 C.F.R. § 404.350(a) (2013). Cadzow filed his application for disability insurance benefits at the age of eighteen on the earnings records of his disabled father and his mother, who is deceased. The Commissioner denied Cadzow's application, and Cadzow filed this appeal. An appeal of a decision of the Commissioner is limited to determining "only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports his decision." *Jones v. Astrue*, 691 F.3d 730, 732 (5th Cir. 2012).

The undersigned has considered the arguments, administrative record, and applicable law and now recommends that the district reverse the Commissioner's decision and remand Cadzow's case for further administrative proceedings.

**I.      Cadzow's Arguments**

Cadzow presents two arguments. He claims the Administrative Law Judge (ALJ): (1) erred at the third step of the sequential evaluation and (2) failed to incorporate non-exertional impairments into the hypothetical question he posed to the vocational expert at the hearing. Cadzow's first argument has merit and requires remand.

**II.     Discussion**

An individual with a disability may qualify for disabled adult child benefits if he (1) is entitled to child's benefits on the earnings record of a parent who is entitled to disability insurance benefits or who is deceased and was insured at the time of death; (2) is a dependent on the insured; (3) is unmarried; and (4) is under the age of eighteen or is older than eighteen years old and has a disability that began before twenty-two years or is a full-time student. 20 C.F.R. § 404.350(a). At issue in this case is whether Cadzow is disabled as a result of his mental impairments. (Tr. 15.)

In order to determine whether a claimant is disabled, the Commissioner utilizes a five-step sequential evaluation, and this evaluation is applied in cases in which the claimant is seeking adult child benefits. *See Smolen v. Chater*, 80 F. 3d 1273, 1289 (9th Cir. 1996). Under the sequential evaluation, the ALJ decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. 20 C.F.R. § 404.1520.

At the third step of the evaluation process the ALJ compares the claimant's impairment(s) with impairments considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). Often referred to as "the listings," these impairments are set out in appendix 1

2

of the regulations. 20 C.F.R. pt. 404, subpart P, app. 1. If the claimant's impairment(s) match or equal the criteria of one of the listings in appendix 1, the claimant is presumed disabled and qualifies for benefits without further inquiry. *Loza*, 219 F.3d at 390.

Listing 12.05, which is at issue in this case, addresses the impairment of mental retardation. The threshold criteria of Listing 12.05 requires that the claimant show "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates an onset before age 22." 20 C.F.R. pt. 404, subpart P, app. 1 § 12.05; *see also Randall v. Astrue*, 570 F.3d 651, 660 (5th Cir. 2009) (construing listing 12.05 to require a showing of onset of the impairment prior to the age of twenty-two). Once the claimant shows that he meets the threshold criteria of the listing, he may qualify for benefits after showing that he meets the criteria under one of four subsections to the listing. 20 C.F.R. pt. 404, subpart P, app. 1 § 12.05. Cadzow meets the threshold criteria of listing 12.05. (*See, e.g.*, Tr. 15, 255–56.) At issue is whether his impairments medically equal the criteria under subsection (C) of the listing. Subsection 12.05(C) requires a showing that the claimant (1) has a valid verbal, performance, or full scale Intelligence Quotient (IQ) of 60 through 70 and (2) suffers from another mental impairment or a physical impairment that imposes additional and significant work-related limitation of function. 20 C.F.R. pt 404, subpart P, app. 1 § 12.05(C).

As to the first part of the subsection (C), the record contains three full scale IQ scores. In 2001 Cadzow's full scale IQ was assessed at 65. (Tr. 356.) In 2004 it was assessed at 74, and seven months prior to the hearing it was assessed at 71. (Tr. 356, 520.) The ALJ referenced the IQ scores of 71 and 74, and Cadzow places emphasis on the score of 71. Assuming that the score of 65 is irrelevant or outdated, Cadzow's IQ assessment of 71, which is the most recent assessment, falls one point outside the range of 60 to 70 required under listing 12.05(C). Pointing to the

3

Commissioner's Program Operation Manual System (POMS) DI 24515.056 (Sept. 13, 2012), Cadzow argues that his IQ score of 71 should be found equivalent to the criteria in 12.05(C) which requires an IQ score between 60 and 70.  According to POMS DI 24515.056(D)(c), slightly higher IQs (*e.g.*, 70–75), coupled with other physical or mental disorders that impose additional and significant work-related limitation of function, which is the second criteria of listing 12.05(C), may support an equivalence determination.  The manual further directs that "the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found." *Id.*

     Cadzow's IQ score of 71 is only one point outside the range required under listing 12.05(C).  In addition, the record demonstrates the presence of significant work-related limitation of function.  First, the ALJ found that Cadzow's mental impairments limited him to performing simple work.  (Tr. 22.)  In addition, a state agency physician found that Cadzow was significantly limited in his ability to understand, remember and carry out simple as well as detailed instructions and more than significantly limited in his ability to maintain attention and concentration for extended periods of time.  (Tr. 468.)  Although the ALJ discounted the state agency physician's opinion, there is evidence in the record to support it.  In regard to Cadzow's ability to follow instructions, faculty at Cadzow's high school noted that he experienced difficulty comprehending oral instructions, and his mother reported that she had to continually repeat herself when speaking to her son.  (Tr. 208, 307.)  In regard to his ability to maintain attention and concentration, teachers at Cadzow's high school reported that his abilities in this area were in the "extremely low range."  (Tr. 305.)  The foregoing demonstrates significant work-related limitation of function that would satisfy the criteria in listing 12.05(C) and provide a basis for finding that Cadzow's IQ of 71 is equivalent to the criteria

4

requiring an IQ score between 60 and 70.  *See* POMS DI 24515.056(D)(c).

The ALJ, however, did not address this issue at step three of the sequential evaluation. In *Audler v. Astrue*, 501 F.3d 446, 448–49 (5th Cir. 2007), the Court of Appeals for the Fifth Circuit held that the ALJ is required to explain why the claimant's impairments are not severe enough to meet the criteria of a listing.  In that case the claimant contended that her impairments met the criteria of listing 1.04.  *Id*. at 448.  Despite evidence in the record of problems with the claimant's spine at the cervical and lumbar levels, the ALJ did not cite listing 1.04.  *Id*.  Instead, he summarily concluded that the claimant's impairments did not meet the criteria of any listed impairment in the regulations.  *Id*.  In addition, the ALJ did not provide a reason to support his determination.  *Id*.  The court found the ALJ's analysis insufficient and admonished that "'[s]uch a bare conclusion is beyond meaningful judicial review.'"  *Id*. (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).  The court explained that because the ALJ had offered nothing to support the step three decision, "'we, as a reviewing court, simply cannot tell whether her decision is based on substantial evidence or not.'" *Audler*, 501 F.3d. at 448 (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).  The court indicated that such a failing requires remand if it harmed the substantial rights of the claimant.  *Audler*, 501 F.3d at 448 (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)).  The court then determined that the claimant had demonstrated that her impairments met the requirements of listing 1.04(A) and that her substantial rights had therefore been affected by the ALJ's failure to explain the basis for the step three determination.  *Audler,* 501 F.3d at 449.

Pursuant to the holding in *Audler*, in a case in which the ALJ's step three determination is at issue, the reviewing court must (1) determine whether the ALJ supported the step three determination with a discussion of the relevant evidence, and, if he failed to do so, (2) determine

whether the ALJ's error was harmless. *Id*. at 448–49. Error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris*, 864 F.2d at 335. If the evidence suggests that the claimant's impairments meet the requirements of a listing, the ALJ's failure to provide the basis for his step three decision is error that requires remand. *Audler*, 501 F.3d at 449.

Turning to the first part of the *Audler* test, the ALJ in this case, like the ALJ in *Audler*, stated in conclusory fashion that Cadzow's impairments did not meet the criteria of a listing. (Tr. 15, 20.) He did not indicate that he considered listing 12.05(C) or any other relevant listing. *See id.* Turning to the second part of the *Audler* test, the ALJ's error at step three of the sequential evaluation was not harmless. As the discussion above regarding the criteria of listing 12.05(C) shows, the evidence demonstrates that Cadzow's impairments may be medically equivalent to the criteria in listing 12.05(C). Accordingly, the ALJ's error was not harmless. *Audler*, 501 F.3d at 449.

It should be noted that the record contains conflicting evidence regarding Cadzow's mental abilities. For example, the evidence shows that he was cooperative and compliant in the classroom and worked for a few months as a dishwasher at a pizza restaurant. (Tr. 163, 300, 302.) On the other hand, according to the evidence, Cadzow preferred visiting with customers rather than doing the tasks assigned to him at the restaurant, and his teachers documented difficulties with fine motor skills and with attention, concentration, and mental control. (Tr. 177, 300–01, 305.) In addition, Cadzow was unable to obtain a driver's license because the driver's education school believed the liability related to allowing him to taking the driving test was too great. (Tr. 46–47.) Such evidence is relevant to determining limitations in Cadzow's ability to perform work. However, the issue at step three of the sequential evaluation is whether the claimant's impairments are severe enough to meet or medically equal the criteria of a listing which would require a finding that the

6

claimant is presumptively disabled. It is the ALJ's responsibility to make such a determination and, in the absence of a meaningful discussion from the ALJ, this court cannot determine if the Commissioner's step three determination is supported by substantial evidence. Remand is therefore required. *See Audler*, 501 F.3d. at 448.

### III.   Recommendation

It is the court's duty to determine whether the Commissioner's decision is supported by substantial evidence and was reached through proper legal standards. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The Commissioner's step three determination in this case was not reached through the application of proper legal standards and is not supported by substantial evidence. The undersigned therefore recommends that the district court reverse the Commissioner's decision and remand Cadzow's case for further administrative proceedings.

### IV.   Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 6, 2013.

NANCY M. KOENIG
United States Magistrate Judge